## THE STATE vs. JOHNSON.

A candidate for an elective office, receiving a majority of the votes polled, where ther were but two persons voted for, but not a majority of the votes of the qualified electors, is not legally elected to the office, though so proclaimed by the judges of election, and commissioned by the Governor—the authority to fill the office being derived from the free choice and election of the qualified electors, not from the pro clamation of the judges of election, nor the certificate of election, nor the commis sion of the Governor.

A commission is, simply, evidence of a right to hold an office, gives color to the acts of the incumbent, and constitutes him an officer *de facto;* but invests him with no right to the office, and it becomes destroyed, canceled and superseded, upon the issuance of a commission to another, who has been legally elected to fill the office.

The corporate authorities of a city, having the right, by their charter, to pass an ordinance providing a tribunal before whom contested elections, under it, should be tried, and providing the course of procedure in such cases, may pass such ordinance after an election has been held, and invest such tribunal with power to determine contests arising out of such previous election.

*Appeal from Sebastian Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge, presiding.

JORDAN, Attorney General, for the appellant.

Mr. Justice HANLY delivered the opinion of the Court.

Upon the order of the prosecuting attorney for the 4th Judicial Circuit, the clerk of the Sebastian Circuit Court issued a writ of *quo warranto*, against the appellee, Raphael M. Johnson, requiring him to show by what authority or warrant, he exercises the office and frenchise of Mayor of the city of Fort Smith, in the county of Sebastian, in this State. This writ bears date the 20th August, 1855, and was made returnable, and was returned to the September term, of the Sebastian Circuit Court, next after its date. At the term of the court to which such writ was returned, the appellee appeared thereto, and interposed a plea in response to the writ, alleging therein, that he was, at the time of the election hereinafter mentioned, a free, white, male inhabitant of said city, over the age of twenty-one years, and a resident within the corporate limits of said city: that an election, for the election of the officers of said city, was holden in said city, on the first Monday in May, A. D. 1855, by the judges and clerks elected for that purpose, by the electors present, at the opening of the polls, in pursuance of, and in accordance with the provisions of the 33*d* and 34*th sections* of the *act* of the *General Assembly* of this State, approved the 19th December, A. D. 1854, entitled, "An act to provide more fully for the incorporation of the City of Fort Smith:" that, upon said election, —— votes were offered to be given in, and the appellee received of the votes so offered, for the office of

Mayor, —— votes, being a majority of all the votes offered to be given in for the candidates for that office; and he avers, that he then and there received a majority of the votes cast, by the qualified electors of said city, for the candidates for the said office of Mayor, and was, thereby, duly elected Mayor of said city, for the term of one year: that immediately after the said election was completed, the judges who held it, granted unto him a certificate of his election, and that the said judges filed the poll-books of said election with the city council of said city, immediately after the organization of said council: that within three days after said election was completed, the said judges forwarded to the Secretary of State, an abstract of all the votes polled at said election for Mayor of said city: that on the 16th day of May, A. D. 1855, a commission, in the name, and by the authority of the State of Arkansas, sealed with the seal of said State, signed by Elias N. Conway, Governor thereof, and attested by the Secretary of said State, and bearing date the day and year aforesaid, was issued to the appellee, whereby, after reciting, that whereas, it appeared that the appellee had been duly elected Mayor, in and for the city of Fort Smith, in this State, at an election held in said city, on the 7th of May, 1855, the said Governor, by virtue of the authority in him vested by the constitution and laws of said State, did thereby commission said appellee, Mayor, in and for said city, for and during the time prescribed by the laws of said State. And thereby authorized and required the appellee to do and perform all and singular the duties incumbent on him as Mayor, in and for said city, according to law, and the trust reposed in him, as in and by the said commission to the court shown, more fully appears: that on the 20th May, 1855, he took and subscribed the oath prescribed, to qualify him as such Mayor, in due form of law, and on that day entered on the duties of his office as such Mayor, and averring that, by that warrant, he was exercising the franchise of Mayor of the City of Fort Smith, and had entered upon, and was using the powers, rights and privileges to said office belonging.

27c

And at the same term, at which the above answer or plea was filed by the appellee, the State, by her attorney, interposed her replication thereto, in substance, as follows: That by an ordinance of the City Council of the City of Fort Smith, entitled, "An ordinance providing the mode of contesting elections within and for the said city, passed and approved by the council of said city, on the 8th day of May, A. D. 1855, in pursuance of the provisions of the 33d and 34th *sections* of the *act* of the *General Assembly* of this State," approved the 19th December, 1854, entitled, "An act to provide more fully for the incorporation of the City of Fort Smith," it was provided as follows, *to wit:*

1. *Be it ordained by the City Council of Fort Smith,* That John Pearson, Calvin Walker and Francis McKiernan, justices of the peace within said city, be, and they are hereby constituted a board of commissioners, for the purpose of hearing and determining upon the elections held within and for said city.

2. When the election of any Mayor, Alderman or Constable of said city, shall be contested, it shall be before said board of commissioners, and the person contesting any such election, shall give the opposite party notice in writing, two days before the time of contesting the same, specifying the grounds upon which he intends to rely, and if any objection be made to the qualification of voters, the names of such voters, with the objections, shall be stated in the notice, and the parties shall be allowed process for witnesses.

3. That the said board of commissioners shall have full power and jurisdiction in the premises, and shall hear and determine such contest, in a summary way, according to the evidence, and if such board of commissioners, or a majority of them, shall be of opinion, that the person proclaimed elected, is not duly elected, but that the person contesting is elected, they shall enter up an order to that effect, which said order, under the hands of said commissioners, or a majority of them, shall be filed with the Recorder of said city.

4. That upon the application of either party, seeking to contest such election, the said commissioners, or a majority of them,

shall immediately set a day and place to hear such contest, and shall have full power to issue subpoenas for witnesses, to administer oaths, and shall, in every respect, constitute a corporation court, for the purpose aforesaid, and shall have full and ample powers to do any and all things necessary for the full and complete performance of the duties aforesaid.

5. If a vacancy shall occur in said board by refusal to act, death, resignation or otherwise, such vacancy may, at any time, be filled by appointment of the city council.

6. If the election of Mayor shall be contested, and the order of said commissioners shall be, that the person so contesting is duly elected, it shall be the duty of the recorder to forward a certified copy of such order, so filed with him, together with a certified copy of this ordinance, to the Governor of the State of Arkansas, within three days after filing such order with him as aforesaid.

7. The decision of said board of commissioners shall be conclusive, and the party so declared to be elected, shall be entitled to such office, and upon being duly qualified as prescribed by law, may enter upon the duties thereof.

8. *Be it further ordained*, That this ordinance take effect and be in force, from and after its passage. Approved, May 8, 1855.

That under and in pursuance of the provisions of said ordinance, afterwards, *to wit:* On the 9th May, 1855, one Wm. H. Rogers, also a free white male inhabitant of said city, over the age of twenty-one years, and a candidate for the office of Mayor, at said city election, so held on the said 7th of May, 1855, made application to the said board of commissioners to contest the election of said appellee to the said office so proclaimed to be elected to, at said election, by the judges thereof, and thereupon, the said board, appointed the 16th May, 1855, at 10 o'clock, A. M., of said day, at the court house, in the said county of Sebastian, to hear and determine such contest, and afterwards, on the 14th May, 1855, the said Rogers, under the ordinance as above, caused notice in writing to be duly served on the appellee, specifying the

time and place of holding such contest, and the grounds on which he, Rogers, intended to rely, together with the names of the voters at said election whose qualifications were objected to, and the objections: that on the 16th May, 1855, at the hour and place named, the board met and proceeded to hear evidence, and thereon adjudged and declared that appellee did not receive a majority of the votes polled for the office of Mayor of the City of Fort Smith, and was not elected to said office at the election aforesaid, and that the said Rogers was, by a majority of those votes, and so entered up their order or judgment accordingly, which said judgment was signed by each of the commissioners, and filed within the time, and in the manner prescribed by the ordinance, as above: that the decision or judgment of the commissioners as above, was, on the 21st May, 1855, copied, and that, with a copy of said ordinance, was transmitted to the Governor of this State, who, on the 7th June, 1855, commissioned, in due form, the said Rogers, as Mayor of the said city of Fort Smith, for the time prescribed by law: that Rogers took the oath of office, as such Mayor, in due form, on the 13th June, 1855, and then took upon himself the duties of said office, and the franchises pertaining thereto, and from that time forward, had continued so to act.

The appellee demurred to the response or replication of the appellant to his plea, and which was, on argument and consideration, sustained by the court, to which appellant excepted at the time, when judgment final was rendered, discharging appellee from the writ in this cause, and the State appealed, on which the case now stands in this court.

The only question presented for our adjudication is, as to the propriety of the judgment of the court below, in sustaining the appellee's demurrer to the State's replication, and rendering judgment discharging appellee from the writ in this behalf.

We think there can be no question, in view of the facts set forth in the replication, that the appellee was not legitimately elected Mayor of the City of Fort Smith, by the electors thereof,

on the 7th May, 1855, but, if we may determine from the same source, it appears, most conclusively, that Rogers was; for, according to our construction of the several acts of the Legislature, pertaining to the incorporation of the City of Fort Smith, the electors of that city were required to possess certain qualifications; as for instance, to be free, white men, over the age of twenty-one years, &c., &c. To determine the result of the election between the appellee and Rogers, they being the only two candidates for the office of Mayor of that city, at the election on the 7th May, 1855, we have but to ascertain who received the majority of the votes of the electors, possessing the qualifications prescribed by those acts of the Legislature, to which we have before herein referred. The poll books of an election serve as conclusive evidence to the judges, who preside at the polls, to enable them to determine the result; as it is from those books alone, that such judges can ascertain that fact. After they have been thus used, and are deposited and filed away, as the law requires, they are, simply, memorials of what they contain, and intrinsically, as a medium of evidence of the qualification of the electors, they are only *prima facie* evidence of that fact. The proclamation and certificate of the judges, who presided over the election of the 7th May, 1855, declaring and making known, that the appellee had received a majority of the electoral votes polled on that day for the office of Mayor, were certainly not more potent than the original books, from which the fact proclaimed and certified to, was derived. The office of the proclamation was to inform the parties concerned of the present result, and that of the certificate and the abstract they were required to make out and send to the Governor, was to furnish *him* with evidence, *prima facie*, or *conclusive*, as to him it makes no difference, whereon he might proceed to issue the commission to the person so appearing to him to have been elected. But, at last, after all this has been done, and the party thus commissioned, he derives his authority as an officer, not from the *proclamation* of the judges, not from the *certificates* of elections, not from those *abstracts* made out for the

Governor, and not from the *commission;* but from the free choice
and election of the *people,* not *the people* in the popular sense of
those words, but from the people who were competent and *quali-
fied electors,* when the votes were polled and the election held.
See *Marberry vs. Madison,* 1 *Cranch.* 137; *Wammach vs. Hollo-
way,* 2 *Ala. Rep.* 33.

If we are correct in this, and of which we do not entertain a
doubt, it is shown by the facts set forth in the replication of the
appellant to the plea of the appellee, which are confessed by
the demurrer, that *Rogers* received a clear majority of eleven
votes over the appellant, of such as were *competent* and *qualified
to vote,* under the acts of the Legislature, at the election for
Mayor of the City of Fort Smith, held on the 7th May, 1855.
The commission to appellee gave to him no right to the office of
Mayor. It was, it is true, evidence of a right to the office; gave
color to his acts, and constituted him thereunder, an officer, *de
facto;* but invested him with no right, impairing the right to the
office of Mayor, which Rogers had derived from the people by
means of the election on the 7th May, 1855. After the close of
the election, Rogers was, to all intents and purposes, Mayor, *de
jure,* of the City of Fort Smith, and so soon as he was commis-
sioned by the Governor, and proceeded to act thereunder, he
became Mayor, *de facto,* of that city, and the commission, which
had been issued to appellee by the Governor, became, and was,
from that time, virtually destroyed, canceled and superseded; so,
that if he continued to act as Mayor, after that time, he was a
naked officer, *de facto,* without the commission to give color to
his acts as such.

It is evident to our minds, from the facts and the views already
expressed, that the appellee was commissioned and acted as
Mayor of Fort Smith; and, consequently, exercised the franchises
pertaining to that office, without lawful authority: and the fact
of usurpation having been established by a *judicial* or *quasi
judicial* tribunal, instituted for the purpose, in the mode pre-
scribed by law, the franchise may be resumed by the State.

The fact that the ordinance providing a tribunal, before whom contested elections should be tried, and prescribing the course of procedure in such cases, having been passed after the election of the 7th May, 1855, does not, in the slightest, affect this case, as between the appellant and appellee. The city authorities of Fort Smith had the right, under their charter, to pass the ordinance in question.

It did not disturb any *right* of the appellee. It gave to Rogers a remedy, as against the appellee, and opened to Rogers the means of confirming to himself the right which he had derived from the election, which was being threatened by the appellee.

We are clear, therefore, from the above views, that the court below erred in sustaining the demurrer of the appellee to the appellant's replication, and rendering judgment discharging the appellee from the writ of *quo warranto* issued in this behalf.

Wherefore, the judgment of the Sebastian Circuit Court for the cause aforesaid, is reversed, and this cause is remanded to that court, with directions that the demurrer aforesaid be overruled, and that the court otherwise proceed herein, in accordance with law, and not inconsistent with this opinion.

Absent, Mr. Justice SCOTT.